UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 11-134 (MJD/AJB)
Criminal No. 13-091 (MJD/LIB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL JOSEPH CROSBY,

    Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER 18 U.S.C. § 3582(c) FOR COMPASSIONATE RELEASE**

## SUMMARY BACKGROUND

On October 22, 2019, defendant filed a motion for a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the First Step Act ("FSA"). (Doc. No. 55.) Defendant is 70 years old, has served over 60% of his sentence, and asserts he has serious, age-related medical conditions that substantially diminish his ability to care for himself in prison. *Id.* at p. 4. He claims that he has a viable release plan and that his conduct in prison shows that his release would not present a danger to the safety of any other person or the community. *Id.* Defendant states that he submitted his request for a sentence reduction and compassionate release with the Warden at the Federal Correctional Institution, Fort Dix, New Jersey, on March 29, 2019, but that more than 30

days have passed without a response.[1]  *Id.* at pp. 2-3.  Therefore, defendant states he has exhausted his administrative remedies with the BOP.

The government has reviewed Crosby's materials, and does not object to his motion based on all the information concerning his health contained in his sealed motion for compassionate release.

However, the in light of Crosby's long track record of serious crimes, the government recommends stringent conditions be placed on him during his 3-year term of supervised release. These terms should include, at a minimum, home detention pursuant to 18 U.S.C. § 3583(d), 18 U.S.C. § 3563(h)(19), and U.S.S.G. § 5F1.2.

### Tax Evasion and Wire Fraud Convictions
### Criminal No. 11-134 (MJD)

This Court well knows that Crosby is a repeatedly convicted fraudster, with a significant criminal history which includes his arrest for failing to appear in October 1988 for trial on 25 charges of mail fraud in the District of Minnesota, and an escape conviction while incarcerated serving his sentence in the fraud case.

Between 2003 and 2011, defendant engaged in an eight-year, multi-million dollar investment fraud scheme which included at least 22 victims.

---

[1] The Bureau of Prisons has not been able to locate the March 2019 request amongst its records.

2011 Presentence Report (2011 PSR), ¶ 5. During this time, the defendant created and ran a number of different entities which offered supposed lucrative investment opportunities in various business projects. *Id.*; Plea Agreement, ¶ 2 at p. 2. The defendant was president or principal officer of the entities. *Id.* As business projects began to fail, the defendant made materially false statements, false representations, and omissions to investors for the purpose of fraudulently inducing them to invest substantial sums of money with the defendant and his businesses. 2011 PSR ¶ 7. In some cases, while one project failed, the defendant began to roll investor money from one development into another. 2011 PSR ¶ 8. On numerous occasions, the defendant did not invest his clients' money as promised, but rather spent it on himself to fund a lavish lifestyle and also to make lulling payments to investors on earlier projects. 2011 PSR ¶¶ 9; 11-12. In all, Crosby was responsible for at least $20,000,000 but not more than $50,000,000 in losses to investors in the various projects.

### Escape Conviction, Criminal No.13-091 (MJD)

In April 2012, defendant was designated to the Bureau of Prisons ("BOP") Federal Prison Camp ("FPC,") in Duluth, Minnesota. 2013 PSR ¶ 6. On March 20, 2013, without seeking or obtaining authorization, defendant and another inmate left the custody of FPC Duluth by pretending to take a waste receptacle out to a dumpster and then broke through an eight-foot fence. Defendant was arrested on April 5, 2013, at a hotel in Burnsville, Minnesota.

Among the items found in the hotel room were $21,000 in cash, a number of vehicle license plates, and birth certificate application paperwork for four different states.

In June 2013, defendant pleaded guilty to a one count indictment charging him with escape from the Federal Prison Camp, Duluth, Minnesota. (Doc. No. 23.) Defendant was sentenced to eighteen months imprisonment to be served consecutively with the sentence imposed in case 11-CR-134 MJD/AJB. (Doc. No. 39, p. 2.) The Court recommended that defendant be designated to the Federal Medical Center, in Rochester, Minnesota to address the defendant's serious medical issues as urged by his treating physician. *Id.* On October 25, 2019, this matter was reassigned from United States District Judge Susan R. Nelson, to United States District Judge Michael J. Davis, case number 13-91 (MJD/LIB). (Doc. No. 60.)

## **Argument**

Having not received a final determination within 30 days of his March 2019 request, the defendant has sought relief from this Court and has moved for compassionate release, arguing that his medical conditions are extraordinary and compelling circumstances to warrant the rare relief of early release.

## I. The First Step Act

Section 603(b) of the First Step Act amends 18 U.S.C. § 3582 to permit inmates themselves to file motions in court seeking "compassionate release." Previously, only the Director of the BOP could file such a motion. Designation of who can seek compassionate release is the only change the FSA made to the compassionate release provision; the Act did not expand the circumstances under which compassionate release is available.

Prior to the Act, § 3582(c)(1)(A) provided that:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Following the Act, § 3582(c)(1)(A) reads exactly the same. The only change, as noted, is to allow a defendant to file a compassionate release motion himself under certain circumstances.

Under the FSA, an inmate may file a motion (1) after exhausting administrative review of the denial of a request to BOP for a compassionate release, or (2) after 30 days have passed since the request was made to the warden, whichever is earlier. The defendant made a request to BOP. The BOP

5

did not respond within 30 days. His motion is, therefore, properly before this Court despite defendant's failure to exhaust his administrative remedies.

## II.  The government does not object to defendant's motion.

The First Step Act authorizes the Court to modify a sentence upon finding that "extraordinary and compelling reasons" warrant the reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). To satisfy § 3582(c)(1)(A)(i), the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).[2] Similarly, 28 U.S.C. § 994(t) provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy

---

[2] The Guidelines' policy statement has not been amended to reflect the amendment to § 3582(c)(1) that allows defendants to seek compassionate release.

statements issued by the Sentencing Commission," the Sentencing Commission's pertinent policy statements are binding on the court).

The United States Sentencing Guidelines define in pertinent part "extraordinary and compelling reasons" due to medical condition of the defendant as:

> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. 1(A). The policy statement also contains a catchall provision recognizing as "extraordinary and compelling" any other reason "[a]s determined by the Director of the Bureau of Prisons." *Id.* cmt. 1(D).

The defendant has the burden to show compassionate release is warranted. *United States v. Heromin,* 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019). Compassionate release on the basis of medical condition is "rare." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188-89 (D.N.M. 2019) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. May 2019).

In this case, the government does not object to early release, but respectfully requests that any order include language authorizing the Bureau of Prisons to follow its procedures for the release and transfer planning of the defendant.

III. **The defendant's supervised release conditions must be as strict as possible.**

The defendant has a decades-long history of criminal conduct. Although he is now his seventies, he is still capable of devising and carrying out new schemes to defraud. Accordingly, the government recommends that the defendant's conditions of supervised release be updated. In addition to the conditions in place from both prior judgments, the government recommends the defendant be placed under indefinite home detention pursuant to 18 U.S.C. § 3583(d), 18 U.S.C. § 3563(h)(19), and U.S.S.G. § 5F1.2.[3] This condition will ensure the safety of the community, and prevent Crosby from attempting to engage in more criminal behavior.

---

[3] The discretion to release a prisoner to home confinement lies solely with the Attorney General. 34 U.S.C. § 60541. The First Step Act "did not modify the requirement that the Bureau of Prisons, not the Court, make the decision to place a prisoner on home confinement or in a residential re-entry center." *United States v. Burkhart*, 2019 WL 615354, *2 (E.D. Ky. Feb. 13, 2019).

The defendant should also be prohibited from using any device or service that could facilitate fraud, including the Internet, computers, and smart phones, without prior approval of his supervising United States Probation Officer. He should also be explicitly forbidden from contacting any victims of his crimes, directly or indirectly. As demonstrated below, they continue to suffer because of his crimes and deserve protection.

**IV.  The defendant's victims oppose his release.**

The government consulted with the defendant's victims as a part of its statutory duty under the Crime Victims Rights Act, 18 U.S.C. § 3771. The victims who responded all stated that release is inappropriate. The government, with permission of the victims, provides the Court with the following perspectives from Crosby's victims.

**Victim SW:** My opinion regarding Mr. Kryzaniak's early release is that it should be denied. He, through fraudulent means and deception, stole a large sum of money from myself and my wife as well as from a good friend of mine. He conned us into believing his scheme. I feel he very well could be doing this again with the Court and the prison system. He is very good at convincing people to do something that they shouldn't do. As a service to society and to me, I think he should serve his full term in prison.

**Victim MF:** Compassionate release is a funny way to make a request for the release of Michael Crosby. He swindled my father out of upwards of $50,000. My father is a person of meager means. That $50,000 was very important to him in his retirement years. Crosby had no compassion for my father in taking advantage of him. Crosby lived a high life until the Attorney's Office caught up with his illegal activities. I am sure he also has assets hidden somewhere.

**Victim SR:** Thank you for letting me know that Michael Krzyzaniak (or Michael Crosby...which was his Fake name) has applied for Compassionate Release. I just want to let you know that I find it absolutely unfathomable, for any reason, to allow this psychopath to be released from prison. He stole $350,000 from myself and my family, which almost wrecked us and I'm just a tiny part of his destruction. He's been a repulsive conman his whole life. He feels zero remorse. He absolutely destroyed his wife and children. He stole from the elderly with no conscience. He escaped from the Duluth prison.

All of his victims were told that he would be in prison for approximately 12 years, with no chance of parole. We expect the Government to honor that. I'm still not sure how he disappeared from the Duluth prison and didn't have any time added to his sentence. He is the epitome of a sociopath. He is 100% evil to the bone. I still have nightmares of what he did to me. He talked me into quitting a wonderful, secure job to go work for him. Approximately two

weeks later the FBI knocked on my door and told me Krzyzaniak stole my money and I would never be working with him as he was under investigation. I was out my savings AND my job. This man should never, ever be shown ANY compassion.

**Victim DT:** I don't feel he needs to be let out early unless he is willing to give me the money he owes me. I am not able to retire because of him. It has been a great hardship on me because I was depending on that money to work towards my retirement. I have had to hold down two jobs because of it.

**Victim PB:** I cannot believe that there [may be] a sentence reduction for this piece of dirt. He hurt so many people. Destroyed so many lives. Swindled millions of dollars. He ESCAPES from prison, and still gets a sentence reduction? He travels under many fake names. HE SHOULD NOT BE LET OUT EARLY. What else can I do to prevent his early release, do I need to talk to a judge?[4] Motion for Compassionate Release? That is absolutely ridiculous and absurd.

## Conclusion

The government does not object to release based on the medical information contained in Crosby's sealed motion. The government recommends

---

[4] This victim indicated he may write a separate letter to the Court as well.

the strictest possible conditions of supervised release to ensure the safety of the community, and to prevent the defendant from engaging in more crimes in the future.

Dated: April 3, 2020

Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

s/ Katharine T. Buzicky

BY: KATHARINE T. BUZICKY
Assistant U.S. Attorney
Attorney ID No. 671031
Email: katharine.buzicky@usdoj.gov